**UNITED STATES of America**
**v.**
**John C. MATTHEWS, Appellant.**

**UNITED STATES of America,**
**v.**
**Roger RAY, Appellant.**

**UNITED STATES of America**
**v.**
**Alonzo WARREN, Appellant.**

Nos. 72–1075, 72–1076 and 72–1581.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 14, 1973.

Decided June 22, 1973.

Robb, Circuit Judge, filed an opinion dissenting in part.

---

Louis Zimmet (appointed by this Court), for appellants in Nos. 72–1075 and 72–1076.

William J. O'Malley, Jr., of the bar of the U. S. District Court for the District of Columbia, pro hac vice by special order of the Court for appellant in No. 72–1581. Lois R. Goodman (appointed by this Court), was on the brief for appellant.

John C. Lenahan, Asst. U. S. Atty., with whom Harold Titus, Jr., U. S. Atty., John A. Terry and Kenneth Michael Robinson, Asst. U. S. Attys., were on the brief for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBB, Circuit Judges.

PER CURIAM.

■ Each of the appellants in these appeals was convicted of (1) possession of unregistered firearms, (2) possession of prohibited weapons, and (3) carrying a dangerous weapon,[1] and was sentenced to a term of imprisonment. We affirm the convictions. The evidence was adequate to enable the jury to find that the possession of the weapons, which were in a car in which appellants were riding, could be knowledgedly attributed to them. In their briefs in this court, but not pressed in oral argument, it is con-tended that the search of the car which housed the weapons was unlawful under the Fourth Amendment, but we think the search in this case must be held to have been valid under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

Though, as stated, we affirm the conviction of appellant Warren, we find merit in the question he raises about his sentence as an adult rather than under the Youth Corrections Act, 18 U.S.C. § 5006 et seq. (1970), the Act, for which he was eligible. His sentence as an adult was imposed prior to the *en banc* decision of this court in United States v. Coefield, 155 U.S.App.D.C. ——, 476 F.2d 1152 (1973), and without the benefit of a report available under section 5010(e) of the Act.

We recognize that the learned trial judge considered the Youth Corrections Act before sentencing Warren but the reasons given for sentencing him as an adult seem not to comport with subsequent judicial developments. This, coupled with the lapse of a substantial time-period since sentencing, with the possible new light now available with respect to this appellant, constrains us to have the sentence reconsidered.

■ A sentence under the Act does not require the sentencing court to make an affirmative finding that the youth offender would benefit from such a sentence. Under section 5010(d) of the Act the eligible youth is entitled to the opportunity the Act affords for rehabilitation unless there is an affirmative and explicit finding he would not benefit from treatment under subsections (b) or (c) of section 5010. The relevant data in this case shows that appellant is making progress in the adult facility at Lorton. Such progress in an adult facility, encouraging as it is, is significant evidence appellant would benefit if placed in one of the special facilities Congress has required to be provided for youth offenders, rather than a reason to

---

1. (1) 26 U.S.C. § 5861(d) (1970); (2) 22 D.C.Code § 3214(a) (1967); (3) 22 D.C.Code § 3204 (1967).

retain him in confinement as an adult. Yet, when it was brought to the attention of the district judge, his only observation was that since appellant was making progress at the adult facility, there was no need to consider the youth facility. We are obliged to honor the decision of Congress that these special facilities are more advantageous for youth, absent a no benefit finding under the *Coefield* criteria. As to appellant's previous record, though it lists a number of juvenile arrests, only two in 1964 resulted in a finding of culpability by the Juvenile Court; and it is significant that with respect to them he was placed on probation, and hence he did not have experience in a custodial setting, as would be the case if sentenced under the Youth Corrections Act.

■■ It also appears that the Act was not utilized because of the court's disaffection in some respects with the administration of the facilities at Lorton for those sentenced under the Act. This is very troubling to us as a basis for sentencing as an adult, for it runs counter to the congressional plan as particularly evidenced by section 5010(d) of the Act—the "no benefit" provision. Moreover, it does not take into consideration the availability to the Attorney General of youth correctional facilities elsewhere than at Lorton. We think the judge's understandable concern is not a sound basis for sentencing as an adult, especially in light of the decision in United States v. Alsbrook, 336 F.Supp. 973, at 981–983 (D.D.C.1971),[2] and where, as here, there has been no reference of the matter under section 5010(e) as contemplated by *Coefield,* and, also, there is an absence of affirmative reasons stated by the court why "the special youth treatment afforded by the Act would be of no value." United States v. Waters, 141 U.S.App.D.C. 289, at 291, 437 F.2d 722, at 724 (1970).

The judgments of convictions are affirmed. The sentence of appellant Warren is vacated and the matter of his sentence is remanded for further proceedings consistent with this opinion.

ROBB, Circuit Judge, dissenting in part:

I would affirm all three judgments and sentences. In my opinion the record fully supports the decision of the district judge, after due consideration, to sentence Warren as an adult.

On the evening of October 15, 1970 Warren was driving a Pontiac convertible when the police stopped the car for a traffic violation. The appellants Matthews and Ray and a third man, one Jones, were in the car with Warren. A valid search of the car disclosed a 12-gauge sawed-off shotgun, a 16-gauge sawed-off shotgun, and a .357 magnum pistol. The 12-gauge shotgun was under the rear of the front seat, the 16-gauge weapon was behind the back seat, where it was partially concealed by the "boot cover", and the pistol was on the back seat. All the weapons were loaded. A .38 caliber cartridge was found in Warren's pocket and five .38 caliber cartridges were in Matthews' pocket. These cartridges could be fired in the .357 magnum pistol. A 12-gauge shotgun round was found on the driver's side of the front seat. Under the front seat on the driver's side was a pillow case in which two holes had been cut so it could be used as a mask. In the trunk were five men's hats, six shirts, and four jackets. Also in the trunk was a butt plate that fit the 12-gauge shotgun, which did not have a plate. The contents of the trunk were accessible to the passengers by way of a "split" or slit in

---

2. We need not consider what the legal situation might be if the District Court had entertained a proceeding, like that in *Alsbrook,* to consider its concerns over Youth Corrections Act treatment, had also considered the possibility of available facilities other than Lorton, which, under section 5013, might include private agencies, and subsequently found that the program would be of no benefit to the appellant.

the boot that opened directly into the trunk.

The obvious inference from the evidence is that Warren and his companions were a team of robbers, completely equipped with weapons, a mask, and clothing to be used in altering their appearances during a getaway. Warren's testimony at trial, that he was not aware of the contents of the car, is preposterous.

The majority notes that in 1964 the Juvenile Court placed Warren on probation in two cases. It should be added that in each case the charge was statutory rape. Moreover, beginning in 1964 Warren was frequently in trouble with the police. In 1964 he was placed on probation for petit larceny; in 1965 he was arrested for robbery by force and violence; and in 1966 for assault with intent to commit rape; again in 1966 for robbery by force and violence; and in 1967 for grand larceny. In 1971, while free on bond in the case at bar, he was arrested twice, once for armed robbery and again for assault with a dangerous weapon and violation of the narcotics laws.

I cannot fault the District Court for noting deficiencies in the administration of the Youth Corrections Act. Such deficiencies bore upon the question whether the defendant would be benefited by treatment under the Act and I see no reason why the judge should have closed his eyes to them. In any event the judge's concern in this regard was not the primary reason for his decision.

Considering the record as a whole I think the action of the district judge was a proper exercise of his discretion. He was justified in concluding as he did that Warren, although young, was a confirmed and hardened criminal who was not fit for treatment as a youth offender.

In my opinion the remand is an unwarranted intrusion into the sentencing process, an effort to substitute the judgment of this court for the judgment of the district judge whose business it was to impose sentence.

I respectfully dissent from the order remanding Warren's case for resentencing.